CLARKE, RECEIVER, APPELLANT, v. NATIONAL BANK OF MONTANA, RESPONDENT.

(No. 6,026.)

(Submitted December 8, 1926. Decided December 28, 1926.)

[252 Pac. 373.]

*Banks and Banking—Checks—Failure to Return Within Statutory Time to Collecting Bank Constitutes Acceptance—Receivers.*

Banks and Banking—Checks—Time for Acceptance by Drawee Bank—Statute.

1. The provisions of sections 8543 and 8544, Revised Codes of 1921 (Negotiable Instruments Law), that the drawee of a bill of exchange is allowed twenty-four hours after presentment in which to decide whether he will or will not accept it, and will be deemed to have accepted it if he fails to return it within that time, are applicable to a check which, under section 8592, is declared to be a bill of exchange drawn on a bank.

Same—Time for Presentment of Check to Bank for Payment—Statute Repealed.

2. *Held*, that the effect of the repeal of section 5923, Revised Codes of 1907, by Chapter 82, Laws of 1909, which section provided that presentment of instrument payable at a bank must be made during banking hours, and substituting therefor section 8482, Revised Codes of 1921, which makes no reference to the time when presentment must be made, is to make presentment for payment at any time proper, whether during banking hours or not.

Same—Status of Receivers.

3. The receiver of a bank from the time he assumes direction of its affairs acts in lieu of its officers; their knowledge of its business becomes his, and whatever it was necessary for them to do for the protection of its interest is his duty, and any neglect in that regard becomes their failure.

Same—Checks—Failure of Receiving Bank to Notify Sending Bank of Nonacceptance in Due Time Constitutes Acceptance.

4. A depositor issued a check on his bank, with sufficient funds therein to meet it, in favor of a person in another city. It was forwarded to a bank in a third city, with which the drawee bank had a balance to its credit, for collection. The collecting bank mailed it to the bank on which it was drawn and the latter received it on a Friday after banking hours and held it until the next Monday, not notifying the collecting bank of its rejection until then. *Held*, in an action to recover the amount of the check which had been credited to the collecting bank's correspondent, that failure of the drawee bank to notify defendant within twenty-

1. See 3 R. C. L. 1308.
3. See 23 R. C. L. 46.
4. See 3 R. C. L. 1144.

four hours after receipt of the check of its determination not to accept constituted acceptance and that defendant's act in crediting its correspondent with the amount of it was payment of the amount sued for.

---

[1] Bills and Notes, 8 C. J., sec. 12, p. 37, n. 70; sec. 476, p. 302, n. 71; sec. 482, p. 307, n. 61; sec. 487, p. 318, n. 8; p. 319, n. 18. Constitutional Law, 12 C. J., sec. 390, p. 887, n. 38.
[2] Bills and Notes, 8 C. J., sec. 760, p. 549, n. 90.
[3] Banks and Banking, 7 C. J., sec. 480, p. 727, n. 2 New.
[4] Banks and Banking, 7 C. J., sec. 352, p. 655, n. 94 New.  Bills and Notes, 8 C. J., sec. 487, p. 319, n. 18 New.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION by George K. Clarke, as receiver of the Home State Bank of Manhattan, against the National Bank of Montana. Judgment for defendant and plaintiff appeals.  Affirmed.

*Mr. Walter Aitken,* for Appellant, submitted a brief and argued the cause orally.

Appellant contends that neither section 8543 nor 8544 of the Negotiable Instruments Act (Rev. Codes 1921), has any application to the facts of this case, for the reason that those sections apply only to bills of exchange as defined by section 8533, and not to a check as defined by section 8592, where, if not paid (sec. 8594), there must be a certification before there is an acceptance; and where, under the provisions of section 8596, "the check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." It is true that the use of the disjunctive "or" in the section last cited might appear to imply a mode of "acceptance" different from certification or payment, but that is not the understanding of the commercial world and it is not known in actual practice. (*Wisner* v. *First Nat. Bank,* 220 Pa. 21, 17 L. R. A. (n. s.) 1266, 68 Atl. 955.)

Further evidence that the provisions of sections 8543 and 8544 were not intended to apply to checks payable at once on presentment is furnished by section 8539, being the first section of the chapter of the Negotiable Instruments Act covering "Acceptance," and which reads: "Sec. 8539: Acceptance of a bill is signification by the drawee of his assent to the order of the drawee. The acceptance must be in writing and signed by the drawee."

Under section 8544 it is only where the drawee "to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder" that "he will be deemed to have accepted the same." There is no such case here, even though the section cited be applicable to checks, which, plainly, it is not. The drawee neither accepted the bill in writing, destroyed the bill nor "refused" to return it nonaccepted within twenty-four hours.

*Mr. C. A. Spaulding,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action brought by plaintiff as receiver of Home State Bank of Manhattan, Montana, to recover from the defendant the sum of $174.15 and interest, alleged to be a balance due from defendant to the plaintiff, as receiver, on deposit with the defendant and payable on demand. Under sufficient pleadings, the following facts were developed at the trial:

On May 19, 1924, People's Store of Manhattan was indebted to Davidson Grocery Company, of Butte, in the sum of $174.15 and on that day drew its check in favor of the grocery company for the amount on Home State Bank of Manhattan, in which it then and at all times thereafter had sufficient funds to meet it when presented for payment. This check it for-

warded to the grocery company by mail, and it was by the latter received on May 20, and on the same day indorsed and deposited with Metals Bank & Trust Company of Butte for collection. On May 21, the Butte bank forwarded the check to defendant, its Helena correspondent, for collection and credit. The Manhattan bank had an account with defendant at the time, with a balance in its favor more than sufficient to cover the check. On receipt of the check, defendant credited the account of the Butte bank with the amount thereof, subject to payment, and charged the Manhattan bank, with the item.

There is some dispute in the testimony as to when this check was forwarded to the Manhattan bank. Smith, vice-president of the defendant, testified that it was so forwarded the day it was received by the defendant. However, the assistant cashier of the Manhattan bank, testifying concerning the time of its receipt by that bank, said: ''The check was received on the afternoon of May 23, 1924. I remember the check distinctly as having received it, and at the time it was received I was the only one in the bank. I received it around the hour of 4 o'clock,'' and further testified that the banking hours of his bank were from 9 to 4; that at 4 o'clock, or a few minutes thereafter, he personally went to the postoffice and obtained the letter containing the check. The letter of transmittal stated that the check was inclosed ''for credit.''

On May 23 the cashier of the Manhattan bank was in Helena for the purpose of interviewing the superintendent of banks, and at that time advised the superintendent that he (the cashier) was not going back to Manhattan to open the bank the next day unless some representative of the banking department went with him and took charge of it. Pursuant to this application, one of the deputies of the superintendent of banks went to Manhattan with the cashier that night and assumed direction of the affairs of the bank before the opening hour next morning, Saturday, May 24, 1924. The doors of the bank

were opened for business on May 24, pending negotiations which were being conducted by the officers in the hope of obtaining assistance to keep on doing business, but, apparently, no deposits were received and no checks paid on that day, although one check was presented for payment, but payment thereof was refused by the assistant cashier, as he claims, under instructions from the representative of the superintendent of banks, and by direction of this representative payment of the check of $174.15 was likewise refused, but no notice thereof was given to defendant on that day.

By resolution of the board of directors of the Manhattan bank, passed on May 25, that institution suspended business, and at 6 P. M. on that day its affairs were wholly taken over by the superintendent of banks, with O. A. Tweed, deputy, in charge.

On Monday, May 26, 1924, the check in question was returned to the defendant and received by it on May 27 from "the examiner in charge." Upon receipt of the check by the defendant, its amount was charged to the account of the Butte bank and on the same day the check was returned to it. The check was held by the Butte bank until June 2, when it was returned to the defendant and by the defendant returned to the examiner in charge of the Manhattan bank, with the information that the Butte bank would not accept the check "because of the delay incurred on the part of the Home State Bank in not returning the item sooner." On July 11, 1924, the defendant again credited the account of the Butte bank with the $174.15, which it had charged back to it on May 27, upon return of the item from the examiner in charge of the Manhattan bank. This check was never charged to the account of People's Store with the Manhattan bank. On July 31, 1924, plaintiff was appointed receiver of the Manhattan bank and thereafter made demand upon the defendant for payment of $174.15, as a balance due the Manhattan bank from defendant. Payment being refused, this action was instituted on February 14, 1925,

and was subsequently tried to the court without a jury. The court made and filed findings of fact and conclusions of law in favor of the defendant, under which judgment was given, made, and entered in its favor, from which the plaintiff has appealed.

Numerous assignments of error in appellant's brief question the sufficiency of the evidence to sustain certain findings of fact made by the trial court, and also the correctness of the conclusions of law, assuming that the facts found were sustained by the evidence.

Among the findings of fact so questioned is one to the effect that the check in controversy was held and retained by the Manhattan bank for more than twenty-four hours after it was received by it, to-wit, until May 27, 1924, and no notice of any kind given to the defendant in relation thereto. In our view of the case, about to be developed, the crucial question is whether the check was so retained by the Manhattan bank.

In the preceding statement of facts we have undertaken to set out those developed at the trial, which seem to be material and concerning which there was no dispute, and we shall now endeavor to apply the law to these unquestioned facts.

The sections of the Code applicable to the facts in this case [1] are section 8592, Revised Codes of 1921: "A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this Act applicable to a bill of exchange payable on demand apply to a check"; section 8543, Id.: "The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation," and section 8544, Id.: "Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same." All of these sections were embraced

in the Uniform Negotiable Instruments Law of this state, enacted as Chapter 121 of the Laws of 1903.

Counsel for appellant contends that sections 8543 and 8544 have no application to a bank check, as defined in section 8592. A similar contention was made in the case of *Wisner* v. *First National Bank of Gallitzin*, 220 Pa. 21, 17 L. R. A. (n. s.) 1266, 68 Atl. 955, and therein received an extended consideration by the supreme court of that state. The sections of the Pennsylvania Negotiable Instruments Law (Pa. St. 1920, secs. 16128, 16129, 16182) under consideration in that case were identical with our sections above quoted, and it was held that the sections corresponding with our sections 8543 and 8544 do apply to a bank check, and that failure of the drawee to return a check to the collecting bank, within twenty-four hours after its delivery for acceptance, amounted to an acceptance thereof and fixed a liability upon the drawee bank; that a tortious refusal on the part of the drawee was not necessary to render the drawee liable, but a mere passive neglect to return it is all that is necessary. We are in accord with this construction. The rule thus declared in Pennsylvania finds support in *State* v. *Weiss*, 46 Misc. Rep. 93, 91 N. Y. Supp. 276; *Standard Trust Co.* v. *Commercial National Bank*, 166 N. C. 112, 81 S. E. 1074; *People's National Bank* v. *Swift*, 134 Tenn. 175, 183 S. W. 725; *Chamberlain, etc.,* v. *Bank of Pleasanton*, 98 Kan. 611, 160 Pac. 1136; *Commercial State Bank* v. *Harkrider-Keith-Cooke* (Tex. Civ. App.), 250 S. W. 1069.

Although this construction of the statute has been criticised by text-writers, we are of opinion that relief therefrom, if it is not desirable that it continue in force, is a matter for legislative action, rather than judicial construction. Such action was taken in Pennsylvania after the decision in the case referred to, by adding to the section corresponding to our section 8544 the following proviso: "Provided, that the mere retention of such bill by the drawee, unless its return has been demanded, will not amount to an acceptance; and provided further, that

the provisions of this section shall not apply to checks." (Pa. St. 1920, sec. 16129.) In Wisconsin the words, "Mere retention of the bill is not acceptance" (Wis. Stats. 1925, sec. 118, 12), were added to the original Act; while in Illinois and South Dakota acts the section was entirely omitted.

We come, then, to an application of the rule to the facts in the instant case. Did the Manhattan bank retain the check in question for more than twenty-four hours after it had been delivered to it for acceptance? According to the assistant cashier, the check was received by the bank shortly after 4 o'clock P. M., on May 23, 1924. This constituted an actual delivery thereof for acceptance as of that time. As above stated, the Uniform Negotiable Instruments Law was enacted in this state in 1903 (Chap. 121, Sess. Laws 1903), and section 75 thereof provided: "Where the instrument is payable at a bank, presentment for payment must be made during banking hours. * * * " This later became section 5923 of the Revised [2] Codes of 1907. In 1909 this section was repealed (Chap. 82, Laws of 1909) by the enactment of what is now section 8482, Revised Codes of 1921, and thereby the former rule that, where an instrument was payable at a bank, presentment for payment was required to be made during banking hours, was abolished. We must presume that by repealing this statute the legislature intended that thenceforth in this state an instrument payable at a bank could be presented to the bank at any time for payment—whether during banking hours or not—otherwise, the legislative Act would be meaningless.

When the superintendent of banks, by his deputy, assumed [3] direction of the affairs of the Manhattan bank on May 23, he was simply acting in lieu of its officers; their knowledge became his knowledge, and whatever was necessary for them to do for the protection of the bank became his duty; his failure to return the check became their failure.

From what has heretofore been said, it follows that the [4] twenty-four hour period allowed to the Manhattan bank

in which to return the check to the defendant, if it refused to accept and pay the same, began to run when the check was actually delivered to it for payment shortly after 4 o'clock P. M. on May 23, 1924, and expired at a corresponding hour on the next day, and, having failed to return it within that time, under the statute, the bank "will be deemed to have accepted the same." By this acceptance the Manhattan bank became primarily liable for the amount of the check to the defendant as indorsee of the Davidson Grocery Company. (3 R. C. L. 1144, sec. 359.)

Upon the liability thus created, the defendant could have maintained an action against the Manhattan bank, and, having paid the check by crediting the Butte bank with the amount thereof, was entitled to set up such payment as a complete defense to the plaintiff's action. This conclusion makes it unnecessary to consider the other matters discussed in appellant's brief.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and MATTHEWS concur.